O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN J. H., | Case No. 2:25-cv-06202-KES |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

## I.

## INTRODUCTION

On July 9, 2025, Plaintiff Karen J. H. ("Plaintiff") filed a Complaint for review of denial of social security disability benefits. (Dkt. 1.) On October 6, 2025, Plaintiff filed a Plaintiff's Brief under Rule 6 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). ("PB" at Dkt. 13.) On November 24, 2025, Defendant Frank Bisignano, the Commissioner of Social Security ("Commissioner"), filed a responding Commissioner's Brief under Rule 7. ("CB" at Dkt. 17.) Plaintiff filed a Reply Brief. ("PRB" at Dkt. 18.) For the reasons stated below, the Commissioner's decision denying benefits is AFFIRMED.

## II.

## BACKGROUND

Plaintiff worked as a cashier from 1990 to 2005, a security officer from 2007 to 2013, and a hair technician from 2013 to 2020. (Administrative Record ("AR") 208.) She stopped working on May 1, 2020, due to chronic depression, short-term memory loss, schizophrenia, type 2 diabetes, anxiety, high blood pressure, high cholesterol, post-traumatic stress disorder, chest pain, gastroparesis, and neuropathy in her feet. AR 230.

On November 19, 2020, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability as of May 1, 2020. AR 178-84. After a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on February 1, 2023. AR 14-33. Plaintiff appealed, and pursuant to the parties' stipulation, the district court remanded the case back to the Social Security Administration on February 9, 2024. AR 887-94; see C.D. Cal. case no. 2:23-cv-08573-KES.

Thereafter, an ALJ held a second hearing on January 10, 2025, at which Plaintiff and a vocational expert ("VE") testified. AR 839-60. On May 30, 2025, the ALJ issued a second unfavorable decision. AR 811-38. The ALJ found that Plaintiff suffered from the severe medically determinable impairments ("MDIs") of "[m]ild coronary artery disease, peripheral neuropathy, peripheral arterial disease[,] diabetes mellitus[,] gastroesophageal reflux disease[,] posttraumatic stress disorder[,] anxiety and bipolar disorder." AR 817. Despite these MDIs, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to do simple work that required walking or standing up to four hours in an eight-hour workday with some additional limitations. AR 822.

Based on the RFC findings, the VE's testimony, and other evidence, the ALJ found that Plaintiff could work as a: (1) bench assembler (Dictionary of Occupational Titles ("DOT") 706.684-022) where a sit/stand stool is provided, (2) inspector (DOT

559.697-075); or (3) marker (DOT 209.587-034). AR 830-31. The ALJ concluded that Plaintiff was not disabled. AR 831.

## III.
## ISSUES PRESENTED

(1) Whether the ALJ erred by failing to give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony about the limiting effects of her foot pain. (PB at 5-10.)

(2) Whether the ALJ erred by finding "not persuasive" the opinions of state agency consultants Heather M. Abrahimi, Psy.D., and Hillary Weiss, Ph.D., that Plaintiff was limited to performing one-to-two-step tasks. (PB at 10-14.)

## IV.
## DISCUSSION

### A. ISSUE ONE: Plaintiff's Foot Pain Testimony.

**1.   Relevant Law.**

The ALJ engages in a two-step analysis to evaluate a claimant's subjective symptom testimony. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only by making specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). Unless an ALJ finds that a claimant is malingering or has failed to provide objective medical evidence in support of his or her testimony, an ALJ must provide clear and convincing reasons

3

for rejecting a claimant's subjective testimony about the severity of experienced symptoms. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). While an ALJ's findings must be properly supported and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ's reasons for rejecting a claimant's subjective symptom testimony must be supported by substantial evidence. Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted). "Substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

### 2. **Summary of Relevant Testimony.**

In 2021, Plaintiff completed a Function Report. AR 248-58. She reported "chronic pain" and the inability to "stand for long periods of time" without feeling exhausted or dizzy. AR 251. She was, however, able to care for her young children (born in 2009, 2010, and 2015) and take daily walks. AR 39, 252, 844, 1113, 1072. Her primary mode of travel was walking. AR 254. She estimated that she could walk about one block before needing to rest. AR 256. She spent one or two hours daily completing household chores. AR 253.

At the first hearing on August 19, 2022, Plaintiff testified that she walked or drove her children to school every other day. AR 39-40. She was "constantly in pain" with swelling, ulcers, and neuropathy affecting her legs and feet. AR 44. She felt a burning sensation and shooting pain in her feet. AR 47. She attributed some of her foot problems to difficulty controlling her diabetes. AR 45-46. When doing chores, she took "lots of breaks" to elevate her feet. AR 50. She estimated that she

4

could walk for about ten minutes before needing to rest. AR 51. She thought that she could probably do a sedentary job but for her depression. AR 48.

At the hearing on January 10, 2025, Plaintiff testified that she suffered a neck injury from a car accident in April 2024, after which she stopped working at home as a hair stylist. AR 844-45, 852. From January 2024 until April 2024, she had worked about five hours per day doing hair, making about $600 per week. AR 845. She worked less in 2022 and 2023, earning closer to $500 each week. AR 846-47, 1016 (earnings records for 2020-2023). She continued to complain about foot pain. AR 855-56.

### 3. **Relevant Administrative Findings.**

A state agency medical consultant, S. Gerson, D.O., reviewed Plaintiff's medical records and determined on initial review that she could stand or walk with normal breaks for four hours. (AR 76, 826.) On reconsideration, her medical records were reviewed by another medical consultant for the state, L. Lo, M.D., who instead concluded that Plaintiff could stand or walk with normal breaks for six hours. (AR 97, 826.) In October 2022, consultative examiner Azizollah Karamlou, M.D., opined that Plaintiff could walk or stand six hours in an eight-hour workday. AR 809. The ALJ found the opinion that Plaintiff could walk or stand for four hours better supported and more consistent with the other medical evidence and therefore adopted the four-hour opinion in the RFC findings. AR 822, 827.

The ALJ found that Plaintiff's MDIs "could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …." AR 823-24. As reasons, the ALJ cited (1) lack of support from the objective medical evidence; (2) inconsistency with Plaintiff's reported activities; and (3) Plaintiff's failure to pursue recommended treatment. AR 823-29.

///

**4.      Analysis.**

      a.      <u>Reason One</u>: Lack of Objective Support.

As for Plaintiff's feet, the ALJ cited evidence of loss of sensation but noted that Plaintiff could walk without an assistive device. AR 824, citing AR 807, 809 (Dr. Karamlou's October 2022 report). Dr. Karamlou observed a "small blister on the lateral part of the right great toe." AR 827, citing AR 807. In March 2022, Plaintiff was exercising one half-hour daily. AR 1157.

In July 2023, the ALJ noted that Plaintiff was hospitalized with a fractured toe and other symptoms but released after being treated with a "wound healing sandal" and medication. AR 824, citing AR 2366.[1] Records from this hospital stay show that Plaintiff reported being unable to walk due to complications from diabetes. AR 1229, 2366. She was diagnosed with "[s]evere left lower extremity peripheral arterial disease ['PAD']" but had a "[s]uccessful revascularization and angioplasty of the left anterior tibialis artery." AR 2366.

The ALJ cited records showing Plaintiff's January 2024 treatment for foot ulcers. AR 818, citing AR 1109. Per those records, Plaintiff complained of "pain in legs x 2[ ]weeks." AR 1108. She was "previously able to walk about a block [but] over [the] p[rior] two weeks noted difficulty walking half a block cause[d] pain and heaviness [in her] legs." AR 1108. The physician's assistant ("PA") Dawn Bernard observed "no edema, [but Plaintiff's] feet [felt] cold to touch[, with the] left [being] worse than [the] right." AR 1109-10. PA Bernard referred Plaintiff to a vascular surgery consult "for evaluation and management of PAD." AR 1109. The ALJ noted that Plaintiff's foot ulcers would appear and resolve over time, not meeting the durational requirement of a severe MDI. AR 818, citing AR 1109 (appointment notes from January 16, 2024, stating that "ulcerations to both

---

[1] The ALJ's decision cites AR 2370 to support this contention but it appears the intended pincite is AR 2366.

feet [were] completely healed"[2]).

After a car crash in April 2024, Plaintiff reported that she had superglued her toenail to prevent it from falling off and "walking ha[d] gotten worse since [the] accident." AR 1091. Again, PA Bernard observed that Plaintiff's feet were not swollen but were cold to the touch. AR 1093.

The ALJ's conclusion that this clinical picture is inconsistent with being unable to walk more than a block is supported by substantial evidence. None of Plaintiff's treating records show that her doctors recommended using an assistive device for walking or that they restricted Plaintiff from walking. To the contrary, in 2022, her doctors recommended that she walk one hour per day, every day. AR 1152.

   b.  <u>Reason Two</u>: Inconsistency with Activities.

The ALJ cited evidence that Plaintiff was able to do activities that generally require being on one's feet, such as cooking, cleaning, doing laundry, shopping in stores, mopping, and vacuuming. AR 829. Plaintiff regularly walked the dog and got her kids ready for school, including walking them to two different schools and helping them with their homework. AR 50, 829. She also continued doing hair at home, working several hours per day. AR 829, 845-48, 852, 1016.

Plaintiff argues that these activities are not inconsistent with her testimony about the limiting effects of her foot pain, because she could only do these activities taking frequent rest breaks or using a mobility scooter. (PB at 6.) But the ALJ could reasonably conclude that Plaintiff's ability each day to walk her children to school and/or walk the dog, spend several hours doing household chores, and work several hours as a hair stylist was inconsistent with her testimony that foot pain prevented her from walking or standing without frequent rest breaks.

Plaintiff also argues that it is unclear whether the ALJ actually relied on this

---

[2] But Plaintiff still complained that she could not walk more than half a block. (AR 1108.)

reason.  (PRB at 2.)  But the ALJ listed Plaintiff's activities and noted that some of them required physical abilities the same as those necessary for obtaining and maintaining employment.  AR 828-29.  The ALJ's reliance on this reason is sufficiently clear.

          c.      <u>Reason Three</u>: Failure to Pursue Recommended Treatment.

"[I]n order to get [DIB] benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment."  <u>Orn v. Astrue</u>, 495 F.3d 625, 636-37 (9th Cir. 2007).  An ALJ may discount a claimant's testimony due to "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008); <u>see also</u> <u>Kallenbach v. Berryhill</u>, 766 F. App'x 518, 521 (9th Cir. 2019) ("The ALJ provided specific, clear, and convincing reasons for discounting [the claimant's] testimony, including … [the claimant's] failure to seek and adhere to prescribed treatment.").

      Concerning PAD, the ALJ pointed out that Plaintiff was referred to a specialist for a surgical consult about this condition in January 2024, but eight months later, and despite having a toe ulcer for about two months, she still had not scheduled this appointment.  AR 825, citing AR 1077.

      Concerning foot pain, the ALJ wrote, "The record reveals periods of poor diabetes control, but this may be secondary to [Plaintiff's] noncompliance with prescribed treatment."  AR 824, citing AR 785.  In a progress note from a telephonic appointment in February 2022, Plaintiff reported that "she ha[d] been without medication for a year" despite her history of diabetes and lower extremity pain.  AR 781.  At that time, she was still able to exercise one half-hour per day and work several hours each day as a hair stylist.  AR 784, 846-47, 1016.  The primary assessment was "[n]oncompliance with diabetes treatment."  AR 785, 1158.  She was referred to a podiatrist for a diabetic foot exam and an optometrist to check for

diabetic retinopathy.  AR 785.

During her July 2023 hospitalization, Plaintiff told the hospital staff that "she ha[d] not been taking her home medication because she ran out so she ha[d] not been having good glucose control …."  AR 1229.

The ALJ also wrote, "In more recent records, e.g., a treatment note dated August 14, 2024, [Plaintiff] did not regularly keep track of her blood sugar levels because she does not like poking herself."  AR 825.  The ALJ continued,  "At that encounter, her A1C was 12.3, not controlled[,] … and [s]he was … counseled about how uncontrolled diabetes can cause end[-]organ damage, cerebrovascular accidents (strokes), myocardial infarction and death."  AR 825, citing AR 1071.

Plaintiff counters that this reason is not persuasive because her treating record shows that she had significant diabetes symptoms even when medically compliant.  (PRB at 4-5, citing AR 714 for the proposition that Plaintiff was taking insulin and glipizide twice a day yet still had elevated hemoglobin A1C levels.)  However, this same June 2022 records provides, "Patient states [that she] needs medication for diabetes A alternative due to [the fact that she] is allergic to metformin [and is] feeling [that] medication is not enough."  AR 714.  Plaintiff was referred for evaluation by an endocrinologist (AR 717), but neither party has cited to records from any appointment with such a specialist.

Plaintiff also argues that the ALJ failed to consider whether Plaintiff's mental impairments diminished her ability to adhere to her diabetes treatment regimen.  (PRB at 5.)  But the ALJ found that Plaintiff had only mild limitations in understanding and applying information with "unimpaired" memory.  AR 819.  None of Plaintiff's treating sources suggest that Plaintiff needed assistance managing her medications.

**B. ISSUE TWO:  Plaintiff's Mental RFC.**

    **1.    Relevant Administrative Proceedings.**

In March 2021, Dr. Abrahimi, a psychologist, opined that Plaintiff had no

limitations on memory or understanding. AR 78. She further opined that Plaintiff had some limitations sustaining concentration and persistence, but that Plaintiff's ability to "carry out very short and simple instructions" was "[n]ot significantly limited." AR 79. As an additional explanation, Dr. Abrahimi wrote that Plaintiff was "capable of understanding, remembering and sustaining concentration, pace and persistence for 1-2 step routines throughout a normal workday/workweek." AR 81. Dr. Abrahimi also opined that Plaintiff could interact with members of the public, recognize typical workplace hazards, travel to routine locations, and set goals independently. AR 81.

On reconsideration in August 2021, Dr. Weiss reviewed Plaintiff's file and found no updated psychological treatment records and no allegations of worsening psychological symptoms. AR 93. Dr. Weiss concluded, "It is not unreasonable to adopt the [initial] level decision [by Dr. Abrahimi]." AR 93.

The ALJ found both opinions "generally supported." AR 828. The ALJ, however, noted that "language used [by Dr. Abrahimi] in the prior administrative medical findings – i.e., a '1-2 step routine' is not vocationally defined, and thus, does not adequately articulate the limitation for use in a residual functional capacity assessment." AR 828. The ALJ found that the medical consultants' "analysis supports the conclusion that [Plaintiff] is capable to perform simple tasks …." AR 828. In the RFC findings, the ALJ concluded that Plaintiff could do simple work. AR 822. "Simple" work can require up to Level Two reasoning. Zavalin v. Colvin, 778 F.3d 842, 843-44 (9th Cir. 2015) (finding "an apparent conflict between [the claimant's] limitation to simple, routine, or repetitive tasks, on the one hand, and the demands of Level 3 reasoning, on the other hand."); DOT Appendix C[3] (defining Level 2 reasoning as "[a]pply[ing] commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal[ing] with problems involving a

---

[3] DOT Appendix C is found at https://occupationalinfo.org/appendxc_1.html.

few concrete variables in or from standardized situations").

### 2. Claimed Error.

Plaintiff alleges that the ALJ misinterpreted the phrase "1-2 step routine" as used by Dr. Abrahimi. (PB at 10-11.) According to Plaintiff, by using this phrase, Dr. Abrahimi intended to limit Plaintiff to work requiring Level One reasoning, the lowest of the six reasoning levels defined by the DOT. (PB at 11-12.) Plaintiff contends that the ALJ erred by failing either to adopt this opinion or give reasons for rejecting it. (PB at 12.)

### 3. Analysis.

As background information, Level One reasoning requires workers to "[a]pply commonsense understanding to carry out simple ***one- or two-step instructions***" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT Appendix C (emphasis added). For example, the following jobs require only Level One reasoning: (1) checker (DOT 919.687-010), whose job it is to count cows as they come off a truck; (2) bottling-line attendant (DOT 920.687-042), who pastes labels on whiskey bottles; and (3) vacuum tester (DOT 920.687-194), which requires tapping the lids of cans with a stick. Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005). In contrast, driving jobs often require Level Three reasoning. See, e.g., sales route driver (DOT 292.353-010), taxi driver (DOT 913.463-018), and light truck driver (DOT 906.683-022). The DOT rates hair-stylist work as requiring Level Four reasoning. AR 829 (citing DOT 332.271-018).

The ALJ did not err by saying that "1-2 step routines" are not vocationally defined. AR 828. The DOT's definition of Level One reasoning refers to 1-2 step ***instructions***, not 1-2 step ***routines***.

The ALJ reasonably interpreted Dr. Abrahimi's opinion as consistent with a limitation to "simple" work. Plaintiff was capable of driving, reading, caring for her young children, completing household chores, getting her children to school on

11

a schedule, using a computer to shop online, paying her own bills, and working part-time as a self-employed hair stylist.  AR 252-55, 845-48.  It is unreasonable to think that Dr. Abrahimi meant to limit someone mentally capable of these activities to Level One reasoning.  Indeed, Dr. Abrahimi found that Plaintiff had no limitations in the functional area of understanding.  AR 78.

Since the ALJ did not reject a medical opinion limiting Plaintiff to Level One reasoning, the ALJ was not required to give reasons for doing so.  Plaintiff's Issue Two arguments do not establish legal error by the ALJ.

## V.
## CONCLUSION

Based on the foregoing, **IT IS ORDERED** that judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

DATED:  January 9, 2026

_____
KAREN E. SCOTT
United States Magistrate Judge